BIRMINGHAM V. ROGERS ET AL.

[This case was decided at the May Term, 1885, and should have been reported in Volume 45.—REP.]

1. LANDLORD AND TENANT, OR CROPPER: *Construction of contract.*
   An agreement between a land owner and laborer for the cultivation of a crop by the latter upon the land of the former, will be construed to create the relation of landlord and tenant, unless the intention to make them partners or tenants in common of the crop be clear and unmistakable. [See in the opinion the contract construed in this case.—REP.]

2. APPEALS FROM J. P.: *Amendment in circuit court. New debt added.*
   Upon an appeal from a justice of the peace, the plaintiff may amend his action in the circuit court by adding a claim against the defendant which was not included in the original action before the justice.

APPEAL from *Logan* Circuit Court.
Hon. R. B. RUTHERFORD, Circuit Judge.

*T. C. Humphry* and *C. A. Levers* for appellant.

The written instrument was the best evidence to establish the relationship existing between the parties. *5 Ark., 651; ib., 672; 8 ib., 204; 13 ib., 125; 1 Gr. Ev., p. p., 82 102.* It clearly created the relation of *landlord and tenant.* See *31 Ark., 435; Taylor Land. & T., p. 19, and note 5 on p. p. 19–20; 34 Ark., 179.*

Under the code plaintiff could join the note with his claims for rent. *Gantt's Dig., sec. 4550; 33 Ark., 107.*

EAKIN, J. Birmingham, as landlord, sued out from a justice of the peace an attachment against John A. and R. E. Rogers, claiming a lien upon a crop of onions and potatoes, in their possession, for rent. He states in his affidavit that he is the landlord, and is entitled to receive, as rent, a half of three acres of onions, worth $100, and a half of six acres of potatoes, worth $150. That said crops are upon his lands, and the onions should have been delivered; that the potatoes would soon be ready for gathering and delivery. He charges that defendants have removed a portion of the crop without his consent, and therefore prays an attachment. There was a warning order against R. E. Rogers, as a non-resident, and the attachment issued on the 11th of October, 1881, and was levied on the crop, which was afterwards, by order of the justice, turned over to the plaintiff. This seems to have been done to enable him to save it by gathering, the articles being of a perishable nature in the fields, and upon this point no question is made. He filed an account of his claim for $240, in accordance with his affidavit. Afterwards, on the 13th of December, 1881, he filed an amended account, in which the value of the half crops, due him as rents, was set down at $93.65, with additional charges for damages incurred by the failure of defendants to gather the crops, and by improper cultivation of the lands, etc., amounting to $109; and charges upon contracts independent of rent amounting to something over $50, making a total of $229.

The defendant denied the facts set forth as grounds of attachment, to-wit.: That plaintiff was their landlord, and entitled to rents, as such, upon the crops; or that they had removed a portion of the crop without his consent; or had

done anything else to justify the attachment. They aver that they were owners of the crop in common with plaintiff, without any relation between them of landlord and tenant, and say they were damaged by the writ of attachment to the amount of $260, for which they pray judgment and that the attachment may be dissolved.

Upon the issues the defendants demanded a jury, which found that the attachment should be dissolved, and the defendants have damages in the sum of $125, and that plaintiff should keep all the crop which had been turned over to him, and recover the rest. The justice entered judgment accordingly, and the plaintiff appealed to the circuit court. There he was allowed to amend his affidavit and state the value of the half crop of onions and potatoes to be $72.15. He also added that the defendants were about to remove the crop raised upon the land without paying the rent. Upon motion of the defendants, the court struck from the account that had been filed the additional claims for damages on the part of plaintiff, and the item of a promissory note due him from defendants, on the ground that they had not been filed at the commencement of the suit, and because the claim for damages was inconsistent with the nature of the action.

There was then a trial by jury of the issues made on the grounds of attachment, and a verdict for damages in favor of defendants for $81.65. After a motion for a new trial had been made and overruled, a bill of exceptions was filed and the plaintiff obtained an appeal from the clerk of this court.

The right of the plaintiff to one-half the crop was conceded throughout. The whole contest was upon two points: *First*—Whether, in suing to recover that, he was entitled to a landlord's lien; and, *second,* whether he had truly alleged grounds for an attachment.

The plaintiff offered to establish the relation of landlord by the introduction of a written contract between himself and R. E. Rogers, executed in 1880. The court refused to allow this, upon the ground that the proffered instrument constituted the parties common owners of the crop, and so instructed the jury. This was a fundamental ruling, inasmuch as it decided the very question in issue, leaving nothing to the jury but the assessment of damages. For, if there were no relation of landlord and tenant, nor landlord's lien, then the attachment was improperly sued out.

*1. Tenant or Cropper.*

The instrument offered is inartificially drawn, and somewhat prolix, but sufficiently certain. It was executed in September, 1880, to be in force for the year 1881. It expresses that R. E. Rogers "rents" certain lands described, and agrees to put it all in cultivation next year, in such crops as might meet the approval of plaintiff, and that in no case would he allow weeds to go to seed upon it whilst in his care. It stipulates that said Rogers was to receive for cultivating this the half of what he might make; except of the corn, all of which he was to deliver to plaintiff at the rate of 25 cents a bushel. Plaintiff, in addition to furnishing the land, was to furnish seed, and to allow Rogers to use the tools on the place. The plaintiff's share was to be delivered to him in the crib, or place furnished to receive it, in good merchantable order. Rogers agreed not to "sub-rent," or to sell, or try to sell, any of the crop until it should be gathered and divided, nor "rent any more land, nor undertake any other work than this contract without consent of plaintiff." The land "now rented" to be broke in the fall and cross-broke in the spring. He agreed to do certain outside work in order to get the use of plaintiff's oxen.

*Construction of contract.*

17–46

It is tolerably plain from the words used, that the parties contemplated a contract for renting. None of the provisions, on the other hand, are such as might not be made between landlord and tenant, to insure proper care and cultivation of the land. Subject to these restrictions, the land by the contract passed under the control of the tenant, as tenant. His co-defendant, John A. Rogers, came in to assist him in making the crop on a contract between themselves, with the landlord's concurrence.

In doubtful cases, if this were doubtful, we are not disposed to extend the doctrine applied in some cases, that where one makes a crop upon the land of another upon an agreement to receive a portion of it as compensation for his labor, he becomes a mere cropper, and part owner of the crop, as distinct from a tenant, but the intention should be clear and unmistakable. It is the policy of the state, and the prosperity of the people as a whole requires it, that land owners, without the force or capital to work their own lands to their full capacity, should be encouraged to let them to those who can furnish their own labor, at least, if no more. By this system the aggregate products of the state will be brought to the highest point, and the general prosperity increased by the impetus thus afforded to all other industries. This is the policy which has dictated the legislative provisions for the landlord's lien, and it will be very materially neutralized, if the courts should lean to constructions of contracts, which destroy the relation of landlord and tenant. If cropping contracts for division of products as in case of partnership, be intended, they are valid; but it is certainly desirable that they be clearly expressed, as land owners may conclude that it is better to to hold their lands for speculative purposes, than to risk being entrapped into lettings under which their security

for rents would rest only upon the fidelity and *bona fides* of the laborer.

We think the Hon. Circuit Judge erred in holding that this contract made the plaintiff and defendants owners in common of the crops, and that it did not tend to establish the relation of landlord and tenant. There were other errors growing out of this fundamental one, which are not likely to occur upon the correction of this, and need not be discussed. The fundamental error swept away all idea of a lien in any case, and made the verdict of the jury a foregone conclusion, save as to the amount of damage, without any necessity for considering whether the other facts authorized the specific attachment, or were true if they did. For this reason and for errors in instructions proceeding upon this basis, the court erred in overruling the motion for a new trial.

As the case must go back, we deem it proper to remark upon another point. After the commencement of the action, the plaintiff before the justice amended the account filed by adding a claim upon a note against defendants, having no connection with the landlord's lien. This the court, on motion of defendants, struck out; not, it seems, because the plaintiff might not have joined it at first. This he might clearly do, as decided in *Kurtz v. Dunn, 36 Ark., 648;* although the lien of the attachment would extend to the rent only. The court struck it out because it was not originally set forth as part of the cause of action. This was a matter subject to the sound discretion of the court, but generally such amendments are allowable in furtherance of justice, and should be allowed when no unfair advantagè may be taken of the defendant. The plaintiff, in all cases, may have a personal judgment for the full amount to which he may be entitled, although his lien may only secure a part.

2. Amending in circuit court—adding new debt.

For the error above indicated, reverse the judgment and remand the cause for new trial on the issues controverting the grounds of the attachment; and for such further proceedings as may be had consistently with law and this opinion.